APRIL L. HOLLINGSWORTH (Bar No. 9391)
KATIE PANZER (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801)415-9909
Facsimile: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com

Alexandra K. Piazza*
Camille Fundora Rodriguez*
Olivia Lanctot*
Mariyam Hussain*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
apiazza@bm.net
crodriguez@bm.net
olanctot@bm.net
mhussain@bm.net

* *Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the Proposed Collective and Class*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **STEPHANIE VALLEY, individually and on behalf of all persons similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**LGCY POWER, LLC,**<br><br>**Defendant.** | **COMPLAINT**<br><br>**COLLECTIVE AND CLASS ACTION**<br><br>**(JURY DEMANDED)**<br><br>Civil No.:<br><br>Judge: |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Stephanie Valley ("Plaintiff"), through her undersigned counsel, individually, and on behalf of all persons similarly situated, files this Collective and Class Action Complaint ("Complaint") against Defendant LGCY Power, LLC ("Defendant" or "LGCY Power"), seeking all available remedies under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*, ("FLSA") and applicable South Carolina wage-and-hour laws. The allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and on information and belief as to the acts of others.

## INTRODUCTION

1.      LGCY Power is in the business of marketing and selling residential solar energy systems. LGCY Power is the fastest growing residential solar installer in the country, offering installation services in 32 states, including extensively throughout South Carolina.

2.      LGCY Power hired Plaintiff and members of the proposed class and collective (hereinafter referred to collectively as "Appointment Setters") to market residential solar systems by contacting potential customers, making presentations regarding LGCY Power's products and services, and scheduling appointments with LGCY Power's sales closers who obtain customer service agreements on LGCY Power's behalf.

3.      Despite promising Plaintiff and the other Appointment Setters independence and plentiful customer leads to make large profits, Defendant controlled every aspect of their employment, and they made well below minimum wage. Plaintiff seeks to represent other current and former purported independent contractors who work or worked for Defendant as Appointment Setters in South Carolina and in the United States. Defendant's unlawful patterns, practices, and

conduct described herein apply broadly to members of the proposed collective and class, in violation of the FLSA and South Carolina wage and hour laws.

## JURISDICTION AND VENUE

4.  Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims derive from a common nucleus of operative facts.

6.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendant resides in and/or conductS business in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this Judicial District.

## PARTIES

7.  Plaintiff Stephanie Valley is a citizen of South Carolina and resides in Summerville, South Carolina. Plaintiff Valley worked for Defendant as an Appointment Setter in South Carolina from October 2021 to October 2023. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented to be a plaintiff in this action. *See* Exhibit A.

8.  Defendant LGCY Power, LLC is a Delaware limited liability company with its principal place of business located at 3333 Digital Drive #600, Lehi, Utah 84043. LGCY Power may be served with process by serving its registered agent, M&B Corporate Services, LLC located at 9 Exchange Place Ste 600, Salt Lake City, Utah 8411.

9.  At all material times, Defendant has been an employer within the meaning of the FLSA under 29 U.S.C. § 203(d) and South Carolina law.

10.     The unlawful acts alleged in this Complaint are committed by Defendant and/or Defendant's officers, agents, employees, or representatives, while actively engaged in the management of Defendant's businesses or affairs and with the authorization of the Defendant.

11.     Defendant employs individuals, including Appointment Setters, in South Carolina and other states.

12.     Plaintiff and Collective and Class Members, as defined below, were and are employees of Defendant within the meaning of 28 U.S.C. § 203(e) and South Carolina law.

13.     Defendant employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as described by 29 U.S.C. §§ 206 – 207.

14.     Defendant had, and continues to have, annual gross business volumes of not less than $500,000, thereby exceeding the statutory standard to be a covered enterprise under the FLSA. 29 U.S.C. § 203(s)(1)(A)(ii).

## COLLECTIVE AND CLASS DEFINITIONS

15.     Plaintiff brings Counts I and II of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action, individually, and on behalf of the following collective:

> All current and former Appointment Setters who were paid by LGCY and were classified as independent contractors in the United States in the past three years (the "FLSA Collective").

16.     Plaintiff brings Counts III of this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and the following class:

> All current and former Appointment Setters who were paid by LGCY and were classified as independent contractors in the state of South Carolina from three years prior to the filing of this Complaint until resolution of this action (the "South Carolina Class").

17.     The FLSA Collective and the South Carolina Class are together referred to as the "Classes."

18.     Plaintiff reserves the right to redefine the Classes prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTUAL BACKGROUND

### I.     The Nature of Plaintiff's and Appointment Setters' Work

19.     LGCY Power is in the business of marketing and selling residential solar energy systems. LGCY Power is the fastest growing residential solar installer in the country, offering installation services in 32 states, including extensively throughout South Carolina.

20.     LGCY Power's earnings are driven by the number of products and services sold, and Appointment Setters provide services that are an integral part of Defendant's business enterprise by carrying out Defendant's policies and procedures to serve Defendant's customers. The work performed by Appointment Setters is within the usual course of LGCY Power's business, *i.e.*, providing services, such as marketing and appointment scheduling, to support the sale of residential solar energy systems.

21.     Defendant hires Appointment Setters throughout South Carolina and the United States to advertise residential solar systems services in retail stores and through door-to-door marketing.

22.     Appointment Setters do not negotiate customer service agreements or close sales by obtaining signed customer service agreements.

23.     Rather, Appointment Setters solely market LGCY Power's products and services and schedule appointments for potential customers with LGC Power's sales closers. Sales closers

are independently tasked with then securing sales and obtaining customer service agreements. Appointment Setters make no sales themselves.

24.    From October 2021 to June 2023 Plaintiff worked as an Appointment Setter conducting door-to-door marketing and appointment setting for Defendant's sales closers.

25.    As a door-to-door Appointment Setter, Plaintiff routinely worked in excess of forty (40) hours per week. Plaintiff conducted door-to-door marketing Monday through Saturday. During the winter months, Plaintiff typically worked from approximately 11:00am to 6:00pm Monday through Friday and 10:00am to 2:00pm on Saturday. The rest of the year, Plaintiff typically worked from approximately 11:00am to 7:30pm and 10:00am to 2:00pm on Saturday. Plaintiff also attended mandatory training meetings three times per week, which totaled approximately three (3) hours and thirty (30) minutes, not including the time she spent preparing for these meetings. In total, Plaintiff regularly worked between 42.5 and 50 hours per week.

26.    From June 2023 to October 2023, Plaintiff worked as an Appointment Setter conducting marketing and appointment setting for Defendant's sales closer within retail stores, including within four (4) Home Depot locations.

27.    As a retail Appointment Setter, Plaintiff routinely worked in excess of forty (40) hours per week. Plaintiff worked in retail stores Tuesday through Saturday from approximately 10:00 or 11:00am until approximately 7:00pm. Plaintiff also attended mandatory training meetings two times per week, which totaled approximately three (3) hours, not including the time she spent preparing for these meetings. In total, Plaintiff regularly worked between 43 and 48 hours per week.

28.    The nature of the work performed by door-to-door and retail Appointment Setters is similar and standardized, as Defendant centrally controls and directs the nature of the work.

29.     Defendant employs direct managers that each Appointment Setter must report to.

## II.     Defendant Controlled the Manner and Means of Plaintiff's and Appointment Setters' Work

30.     Defendant exercises control over nearly every aspect of Appointment Setters' work.

31.     Defendant determines when and where Appointment Setters work.

32.     Defendant also dictates the manner and methods Appointment Setters may use to promote its services and products.

33.     For example, Appointment Setters are trained by Defendant to deliver a specific six step "pitch" to customers. Defendant instructs Appointment Setters on what to say, how to say it, and how to present themselves.

34.     During weekly mandatory trainings, Appointment Setters are required to practice this "pitch" before a manger to ensure they are complying with Defendant's guidelines. Defendant's managers advise Appointment Setters to use certain phrasing and words when delivering a pitch.

35.     Defendant monitors how many hours Appointment Setters work and how many leads Appointment Setters speak with each day.

36.     Defendant assigns Appointment Setters designated managers to whom they report.

37.     Defendant provides uniforms that Appointment Setters are required to wear.

38.     Defendant does not allow Appointment Setters to work for any competitor while employed by Defendant.

39.     As a door-to-door Appointment Setter, Defendant assigned Plaintiff designated geographic areas and instructed Plaintiff to visit approximately 100-150 houses per day.

40.	To meet Defendant's requirements, Plaintiff worked between seven (7) and twelve (12) hours per day Monday through Friday and four (4) hours on Saturday. Defendant monitored Plaintiff's hours, house visits, and outcomes of the house visits through an app called Canvas.

41.	Defendant required Plaintiff to speak with 90% of her designated geographic area before reassigning her a new one. As such, Plaintiff frequently revisited houses until she met this condition.

42.	If a door-to-door Appointment Setter fell short of Defendant's required house visits, a manager would single out the Appointment Setter at the weekly training meetings and question him or her on their performance.

43.	As a door-to-door Appointment Setter, Defendant required Plaintiff to wear a polo shirt with the LGCY Power logo and LGCY Power badge.

44.	As a retail Appointment Setter, Defendant created and posted Plaintiff's schedule monthly. Defendant assigned Plaintiff specific shifts and site locations. Plaintiff's shifts were between eight (8) to nine (9) hours each. Plaintiff was not able to turn down assigned shifts. If she could not work a shift, she was required to independently find another Appointment Setter to cover her shift, which was nearly impossible given Appointment Setters typically all worked the same days and shift times.

45.	As a retail Appointment Setter, Defendant monitored Plaintiff's hours by requiring that she clock in and submit a photo of herself inside the site location through a scheduling tool called "Roosted." Although Defendant required the photo submission to track hours, it also used the photo to ensure that Plaintiff was wearing the mandatory uniform provided by Defendant.

46.	As a retail Appointment Setter, Defendant further required that upon clocking out, Plaintiff complete a shift questionnaire to report how many leads she connected with.

47.     As a retail Appointment Setter, Defendant provided Plaintiff with a tablet to use for scheduling appointments for potential customers with sale closers. Defendant also provided Plaintiff with marketing materials, such as banners to attract potential customers and pamphlets to share information with potential customers. Plaintiff was not permitted to and did not use any personal equipment or marketing supplies in performing her job duties.

48.     As a retail Appointment Setter, Defendant provided and required Plaintiff to wear a polo shirt with LGCY's partner's brand logo embroidered on it. Plaintiff was also required to wear jeans or slacks and closed-toe shoes.

### III.    Defendant's Compensation Model

49.     Plaintiff did not receive an hourly wage when she was a door-to-door Appointment Setter or a retail Appointment Setter. Instead, like all of Defendant's Appointment Setters, Plaintiff was paid by LGCY Power through commissions.

50.     As a door-to-door Appointment Setter, Plaintiff's commission was based on the number of appointments she scheduled for sale closers that resulted in customer service agreement. Plaintiff would receive her commission after installation of the residential solar panels, and her commission would equal $300.00 per kilowatt installed.

51.     As a retail Appointment Setter, Plaintiff's commission was based on the number of appointments she scheduled for potential customers with sales closers that were subsequently completed. She also received a bonus if an appointment she scheduled resulted in a customer service agreement and residential installation. Specifically, Plaintiff would receive $50.00 per appointment completed and a bonus of $50.00 if it resulted in an agreement, plus $50.00 per kilowatt installed.

52.     Defendant maintains a policy that if an Appointment Setter leaves LGCY Power after setting an appointment that resulted in a sale but before installation occurs, Defendant will pay the former Appointment Setter 50% of the commission upon installation, and the remaining 50% of the commission six months after the installation.

53.     Defendant offered various non-discretionary bonuses to Plaintiff and Appointment Setters. For example, Defendant advertised opportunities for bonuses to door-to-door Appointment Setters if they satisfied certain metrics. For retail Appointment Setters, Defendant provided a $1,000.00 sign-on bonus.

54.     Because Plaintiff and Appointment Setters were paid commissions, Plaintiff and other Appointment Setters did not receive overtime compensation.

55.     During her tenure with LGCY Power, as both a door-to-door and retail Appointment Setter, Plaintiff regularly worked over forty (40) hours per week. However, approximately every other week Plaintiff did not receive any commissions and thus no pay at all.

56.     Plaintiff's paychecks never included overtime compensation.

## IV.     Defendant Fails to Pay Appointment Setters for Mandatory Training Time

57.     Defendant does not expect Appointment Setters to have any specialized knowledge prior to signing on to be an Appointment Setter.

58.     Plaintiff had no prior experience or training in marketing or sales and no prior knowledge of the solar industry before becoming an Appointment Setter for Defendant.

59.     Instead, Defendant provides the training needed for Appointment Setters to perform their work.

60.     Defendant requires Appointment Setters to complete Defendant's initial "bootcamp" training program and then ongoing weekly trainings. However, because Appointment

Setters are paid on a commission basis, they do not earn money while attending these mandatory trainings.

61.     The initial "bootcamp" training program is approximately seven (7) hours of in-person instruction followed by an online portion through an app called Tiled. The online portion includes a series of videos with quizzes at the end. The online portion takes roughly one hour to complete.

62.     Appointment Setter are then required to attend in-person training meetings twice per week that last ninety (90) minutes each. For door-to-door Appointment Setters, these meetings occur on Tuesdays and Fridays, and for retail Appointment Setters, these meetings occur on Mondays and Fridays.

63.     Door-to-door Appointment Setters are further required to attend a virtual training meeting once per week that lasts about thirty (30) minutes.

64.     Defendant instructs Appointment Setters that these meetings are not optional, and if they cannot attend a meeting, they must submit proof of their reason for non-attendance.

65.     Defendant also requires Appointment Setters to complete assignments outside of weekly meetings. For instance, as part of the trainings, Appointment Setters are required to purchase selected books and come prepared to discuss assigned readings at these meetings. These readings took Plaintiff, on average, forty (40) minutes per week to complete.

66.     Appointment Setters face repercussions for failing to attend or arriving late to weekly training meetings. For example, if an Appointment Setter showed up late for a weekly training meeting, the Appointment Setter was required to complete one pushup for every minute he or she was late before the meeting could resume, and was embarrassed in front of their co-workers.

67. Plaintiff arrived ten (10) minutes early to every meeting to ensure she would not be subjected to this punishment and embarrassment.

68. Plaintiff routinely spent three (3) to four (4) hours per week attending mandatory trainings and completing training assignments, and routinely worked three (3) to eight (8) hours in excess of forty (40) hours per week.

## V. Defendant's Compensation Plan and Misclassification of Appointment Setters as Independent Contractors is Willful

69. LGCY Power intentionally misclassifies Appointment Setters to avoid LGCY Power's obligations under the FLSA and South Carolina state law. LGCY saves thousands of dollars in avoiding payroll withholdings and other expenses associated with its core business by not providing Appointment Setters with proper minimum wage, health, pension, or other benefits ordinary employees are entitled to and enjoy.

70. Defendant is aware that Appointment Setters are not properly compensated under the FLSA or applicable state laws because Defendant's managers and other supervisory employees know that Appointment Setters attend unpaid training and do not receive minimum wage and overtime compensation.

71. In fact, Plaintiff raised concerns about her classification to Defendant's Director of Retail, Cassie Barringer, expressing that the mandatory hours, requirement to clock in and out, and the low pay seemed illegal. Ms. Barringer ignored Plaintiff's complaint, and instead, instructed Plaintiff to stop having a negative attitude. Ms. Barringer further told Plaintiff that she did not want to hear Plaintiff complain about the issue again.

72. As a large company with operations throughout the United States, Defendant has access to human resource expertise and legal counsel who can advise Defendant on its FLSA and state wage and hour law compliance obligations.

73. Defendant's actions in violation of the FLSA and state law are made willfully, in an effort to avoid liability under the FLSA and state law.

74. Even though the FLSA and state laws require minimum wage and overtime premium compensation for hours worked over forty (40) hours per week, Defendant did not pay Plaintiff and other Appointment Setters at least minimum wage and proper overtime compensation for overtime hours worked.

75. Defendant knew, or absent its own recklessness should have known, that the Appointment Setters were entitled to minimum wage and overtime premiums.

76. Defendant knew, or absent its own recklessness should have known, that the Appointment Setters were entitled to compensation for all time worked.

77. By failing to pay all the compensation owed to Plaintiff and other Appointment Setters, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions and state laws.

78. Defendant was on notice of its wage and hour obligations under the FLSA and state law—specifically with respect to its classification of Appointment Setters as independent contractors—because Defendant has previously been sued for similar violations of wage and hour laws. *See Green, et al. v. LGCY Power LLC, et al.*, No. 37-2019-00026629-CU-OE-CTL (CA San Diego Super. Ct.)

79. Defendant has not made good faith efforts to comply with the FLSA and state laws.

## <u>COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA</u>

80. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

81. Plaintiff desires to pursue the FLSA claims on behalf of any individuals who opt-

in to this action pursuant to 29 U.S.C. § 216(b).

82. Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals were misclassified by Defendant as independent contractors; all worked pursuant to Defendant's previously described common pay practices; and, as a result of such practices, all were not paid for all hours worked; were not paid the full and legally mandated minimum wage amounts; and, were not paid proper overtime premiums for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendant's common compensation, timekeeping and payroll practices.

83. Specifically, Defendant failed to compensate Plaintiff for all hours worked and failed to pay legally mandated minimum wage and proper overtime premiums at time and a half (1½) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

84. The similarly situated employees are known to Defendant and are readily identifiable and may be located through Defendant's business records and the records of any payroll companies Defendant uses.

85. Defendant employs many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of the instant litigation through direct means, such as U.S. mail and/or other appropriate means and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

86.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the South Carolina Class as defined above.

87.     The members of the South Carolina Class are so numerous and dispersed that joinder of all the members is impracticable. Upon information and belief, there are more than forty (40) members in the South Carolina Class.

88.     Plaintiff will fairly and adequately represent and protect the interests of the South Carolina Class because there is no conflict between the claims of Plaintiff and those of the South Carolina Class, and Plaintiff's claims are typical of the claims of the South Carolina Class. Plaintiff's undersigned counsel is competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like the one at bar.

89.     There are questions of law and fact common to the proposed South Carolina Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether LGCY Power has violated and continues to violate South Carolina state law through its policies and practices of misclassifying Plaintiff and the South Carolina Class as independent contractors and not timely paying them proper compensation for all hours worked, including overtime compensation.

90.     Plaintiff's claims are typical of the claims of the South Carolina Class in the following ways, without limitation: (a) Plaintiff is a member of the South Carolina Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the South Carolina Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the South Carolina Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the South Carolina Class; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the South Carolina members.

91.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the South Carolina Class predominate over any questions affecting only individual Class members. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The South Carolina Class members are readily identifiable from Defendant's own employment records. Prosecution of separate actions by individual members of the South Carolina Class would create the risk of inconsistent or varying adjudications with respect to individual South Carolina Class members that would establish incompatible standards of conduct for LGCY Power.

92.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the South Carolina Class members, while substantial, are not great enough to enable them to maintain separate suits against LGCY Power.

93.     Without a class action, Defendant will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff and the South Carolina Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION
### Violation of the FLSA: Failure to Pay Minimum Wage
### (On Behalf Plaintiff and the FLSA Collective)

94.     All previous paragraphs are incorporated as though fully set forth herein.

95. The FLSA requires that covered employees be compensated at a rate not less than the federal minimum wage for all hours worked in a workweek. *See* 29 U.S.C. § 206(a)(1).

96. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

97. Defendant is subject to the wage requirements of the FLSA because Defendant is an "employer" under 29 U.S.C. § 203(d).

98. Defendant's compensation scheme applicable to Plaintiff and the FLSA Collective fails to comply with 29 U.S.C. § 206(a)(1).

99. During all relevant times, Plaintiff and the FLSA Collective were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

100. Defendant knowingly failed to compensate Plaintiff and the FLSA Collective at a rate of not less than the federal minimum wage for all hours worked per week, in violation of 29 U.S.C. § 206(a)(1).

101. Plaintiff and the FLSA Collective are entitled to be paid minimum wage for all hours worked in a workweek pursuant to 29 U.S.C. § 206(a)(1).

102. Defendant knowingly failed to compensate Plaintiff and the FLSA Collective at the minimum wage for all hours worked per week, in violation of 29 U.S.C. § 206(a)(1).

103. Defendant also failed to make, keep, and preserve records with respect to Plaintiff and the FLSA Collective sufficient to determine their wages, hours, and other conditions of employment, in violation of 29 C.F.R. § 516.2(a)(7).

104. In violating the FLSA, Defendant has acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## SECOND CAUSE OF ACTION
### Violation of the FLSA: Failure to Properly Pay Overtime Compensation
### (On Behalf of Plaintiff and the FLSA Collective)

105.    All previous paragraphs are incorporated as though fully set forth herein.

106.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he or she is compensated. *See* 29 U.S.C. § 207(a)(1).

107.    Defendant is subject to the wage requirements of the FLSA because Defendant is an "employer" under 29 U.S.C. § 203(d).

108.    At all relevant times, the Defendant is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

109.    During all relevant times, Plaintiff and the FLSA Collective are covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

110.    Plaintiff and the FLSA Collective are not exempt from the requirements of the FLSA.

111.    Plaintiff and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

112.    Defendant knowingly fails to properly compensate Plaintiff and the FLSA Collective for all hours worked when they work in excess of forty (40) hours per week and fails to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

113.    Defendant also fails to create, keep, and preserve accurate records with respect to

work performed by the Appointment Setters sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

114. In violating the FLSA, Defendant acts willfully and with reckless disregard of clearly applicable FLSA provisions.

115. Pursuant to 29 U.S.C. § 216(b), employers such as the Defendant, who intentionally fail to pay an employee wage in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

### THIRD CAUSE OF ACTION
**Failure to Provide Regular Pay/Minimum Wages**
**S.C. Code Ann. § 41-10-30**
**(On Behalf of Plaintiff and the South Carolina Class)**

116. All previous paragraphs are incorporated as though fully set forth herein.

117. Pursuant to the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110 ("SCPWA"), "[e]very employer in the State shall pay all wages due in lawful United States money or by negotiable warrant or check bearing even date with the payday." S.C. Code Ann. § 41-10-40(A).

118. "An employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law[.]" S.C. Code Ann. § 41-10-40(C).

119. Defendant is an employer within the meaning of the SCPWA. S.C. Code Ann. § 41-10-10(1).

120. Plaintiff and South Carolina Class Members were employees of Defendant within the meaning of the SCPWA and, as such, were entitled to timely payment of wages due to them.

S.C. Code Ann. § 41-10-10(2).

121.     Plaintiff and South Carolina Class Members were entitled to at least the federal and state minimum wage of $7.25 per hour.

122.     Defendant failed to pay Plaintiff and South Carolina Class members the wages they were due.

123.     Defendant was not permitted to withhold Plaintiff or South Carolina Class members' wages by state or federal law.

124.     Accordingly, Plaintiff and South Carolina Class Members are entitled to their unpaid wages, treble damages, litigation costs, counsel fees, and such further relief as may be just and proper. S.C. Code Ann. § 41-10-80(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of themselves and all others similarly situated:

a.  An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

c.  An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the South Carolina Class;

d.  Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA and the laws of the State of South Carolina;

e.  For a declaratory judgment that Defendant violated the Fair Labor Standards Act as alleged herein;

f.  For a declaratory judgment that Defendant violated the South Carolina Payment of Wages Act as alleged herein;

g.  For an order awarding Plaintiff, the FLSA Collective, and the South Carolina Class liquidated and compensatory damages, including lost wages, earnings,

and other employee benefits, restitution, and all other sums of money owed to Plaintiff, the FLSA Collective and the South Carolina Class, together with interest on these amounts, according to proof;

h. For interest on any damages and/or penalties awarded, as provided by applicable law; and

i. For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: February 27, 2024                    Respectfully submitted,

/s/April L. Hollingsworth
April L. Hollingsworth
Katie Panzer
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Tel: (801) 415-9909
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com
Local Counsel for Plaintiff

Alexandra K. Piazza*
**BERGER MONTAGUE PC**
2001 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
Tel.: 215-875-3063
apiazza@bm.net

Camille Fundora Rodriguez*
Olivia Lanctot*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
crodriguez@bm.net
olanctot@bm.net

Mariyam Hussain*
**BERGER MONTAGUE PC**

1720 W. Division Street
Chicago, IL 60622
Tel.: (773) 666-4316
mhussain@bm.net


*Pro hac vice forthcoming Attorneys for
Plaintiff and the Proposed Class*